The next case this morning is 21-4079 Hatfield v. Cottages on 78th Community. Counsel for Appellant, would you make your appearance again please and proceed. Thank you, John Morris, Attorney for Ms. Hatfield. May it please the Court, the question of attorney's fees, there's a separate order for attorney's fee order to show cause on sanctions against us as counsel. The Court ruled that there were no fees available for the state law claims, that issue has not been appealed. So the question is just whether an award of fees was appropriate under the Fair Housing Act. Now the District Court made a determination that fees were warranted applying three criteria that the Court adopted. One is that Ms. Hatfield's claims, including her were frivolous. The second is that Ms. Hatfield was incorrigibly litigious. And the third was because the quote sequence of events bear hallmarks of vindictive weaponizing of the legal system, it shows that Ms. Hatfield was acting in bad faith. Now the standard under the Fair Housing Act for attorney's fees is very high when you're looking at fees against a plaintiff. The Sixth Circuit stated and cited this in our brief, an award of attorney's fees against a losing plaintiff in a civil rights action is an extreme sanction and must be limited to truly egregious cases of misconduct. Attorney's fees and costs may be awarded to a defendant under the Federal Fair Housing Act on a finding that the plaintiff's action was frivolous, unreasonable, or without foundation, even though not brought in subjective bad faith. The United States Supreme Court has stated a quote, the District Courts must, I quote, resist the understandable temptation to engage in post hoc reasoning as hindsight logic could most airtight claims. Even when the law of the facts of your question are unfavorable at the outset, the party may have an entirely reasonable ground for bringing suit. As it relates to the first criteria of the court, I simply point to our brief, the complaint, the documents attached to the complaint that provide evidence of all the claims. Now, you may have an opinion of whether that evidence is conclusive or not, but it is evidence and I'm confident that every element of every claim has been pled with well-pled facts. Well, let me stop you there. As it relates to that element, frivolity, if in the merits appeal, the separate merits appeal, we were to find that the FHA retaliation claim was not supported by well-pled facts and was in fact meritless, then what is your argument to indicate, if any, that it was nevertheless not frivolous? So, Your Honors, what that would involve is just a read through the allegations one by one, and, you know, luckily, I guess, we went to the extra effort to actually attach some of the evidence to the complaint. And I just don't think there's any way a reasonable person can read that look at the allegations and find that the claims or the allegations were frivolous. Well, let me just suggest, try to put a fine point on it. Let's assume, again, that the notion of whether this was a well-pled claim, our determination was that it is not. Do you have any cases that indicate, that draw the distinction, and arguably there is a distinction, between whether a claim fails and whether the claim would be deemed frivolous? Oh, yeah. And I cited a couple of those in our brief. What's the best one for you? I'll point to the Sixth Circuit again, Smith v. Smith-Kramer, to determine whether a plaintiff's suit is frivolous. And then I go to the quote. If, quote, no evidence supports the plaintiff's position, no evidence, or the defects in the suit are of such a magnitude that the plaintiff's ultimate failure is clearly apparent from the beginning or at some significant point in the proceeding after which the plaintiff continues to litigate, attorney's fees may appropriately be awarded to a defendant in an FHA case. So there's a lot of space between that standard and losing. And I think that's the space we're looking at. Okay. Well, let's, for the moment, operate in that space. That still, the court, nevertheless, didn't just rely on that ground. So even if we were talking about if we were in that space and that was the sole ground, that might be an argument to prevail. But there were other grounds that the court cited for purposes of its determination of fees. So what do you do with the other two grounds and how those combine with any purported frivolity? Yeah. And as to the other two grounds that Ms. Hatfield is incorrigibly litigious and the sequence of events bear hallmarks of vindictive weaponizing of the legal system, there's just no evidence of that. There's just no basis for making those determinations. Again, there was no evidence ever taken in this case. There was never even a hearing in this case. All the motions were presented on either motions to dismiss Ms. Hatfield's complaint or on motions for judgment on the pleadings. So there was no possibility to garner evidence that would satisfy an incorrigibly litigious. The only way the court could do that is improperly relying on just bare statements, unlitigated, with no evidence in pleadings of the defendants. There's just, and even with those bare statements, you can't get there. I mean, what you're looking at is the sum total of Ms. Hatfield's litigation in the world of this lawsuit is a small claims court case, which she withdrew, a discrimination complaint, which she withdrew, and this case. And there's no way you get to incorrigibly litigious or vindictive weaponizing of the legal system under those facts. And most importantly, if you actually look at the allegations in the complaint, every step that she's doing is in response to some further escalation by the HOA. The small claims court case and the discrimination complaint were filed after the HOA arbitrarily fined her over $2,000. It just decided that she was obligated to pay attorney's fees, had a letter emailed from the attorney under the threat of foreclosure of her home. No trial, no evidence, no opportunity to respond, just a letter, you owe us $2,200, pay or be foreclosed. That escalated to a small claims court case, the minimal amount that you could expect, the most conservative legal approach, and then ultimately her complaint with the discrimination complaint. When the HOA responded against and ratcheted up again, the letter to her employer, the letter to all the owners, the assessment to all the owners, basically infuriating the owners, telling them, we're now assessing you because of Ms. Hatfield. There's no better way to turn your neighbors against you than to tell them that you're taking money out of their pocket. That's exactly what they did. Only in response to those things and this annual meeting, which the allegations bear out. And these are quotes. We didn't have to stretch very far where she's dangerous, where the owners should band together against her, file police reports. Only after all of that did she withdraw her two other claims and file this case. There's just no factional basis in the record. And there's certainly no factual basis given Ms. Hatfield the benefit of inferences, which she should get. I take it. Well, what is your view about this rule 11 order to show cause? I mean, that's not really properly here as for appellate purposes, is it? I think it is, your honor. It's an order. It's not a final order. Is it a final order? Well, the order to show cause is a final order. We did have to show cause. We did that. We filed pleadings. I'll focus that very specifically on the one point that I raised in our brief. There's a third circuit case. The rule 11 standard contemplates that before an attorney can seek rule 11 sanctions, you must give the safe harbor and notice and send over your motion, all those things. Rule 11 does not contemplate that or provide for that specifically for a court that seeks sui sponte rule 11 sanctions. The third circuit has nonetheless made that a requirement of a court issuing rule 11 sanctions, which means there must be some notice. And more specifically, though, the third circuit has said, once you ruled in the case, you can't thereafter seek rule 11 sanctions sui sponte by the court because you've effectively defeated all the reasons for rule 11, the first and foremost, which is an opportunity to correct your action. The second thing is now you're dealing with... I'm sorry. I want to get clear on the jurisdictional issue. I'm talking final for purposes of 1291, the statute that determines final orders for appeal. The court has not ruled on this question of attorney's fees vis-a-vis you, has it? So the court has ruled, issued an order to show cause, requiring us to show cause. It has not ruled on the pleading that we submit. And then there is... So what is final about that? Has that proceeding resolved itself? Has it culminated in an order imposing on your rights? If you put it that way, no, Your Honor. I think that's the way the federal law puts it, but okay. There is no final order from the court. However, that third circuit case that we cited, if this court were to adopt that rule, that would put an end to it. Because the issuance of the order to show cause post-judgment would just be improper. And for all the reasons that we've cited and that are stated in that case, there's no way to adjudicate it. And the precise problem that we're dealing with here, we already have two appeals on this case, an attorney's fees and a substantive case. Allowing a court to issue post-judgment, sua sponte, motion for rule 11 sanctions, now turns each case into a potentially a three-case appeal, which is exactly what we're potentially dealing with here. Your Honor, I would like to address the court's favorite case on this issue very briefly. This is Taylor v. Harbor Point. It's critical to understand the facts of this. And it's nearly impossible to find cases where fees are awarded under the Fair Housing Act against a plaintiff. In Taylor v. Harbor Point, we have an attorney plaintiff. Whose neighbor came over and cleaned up her patio with her permission. She sued for a violation of the Fair Housing Act. She did not claim she was disabled. In fact, she stated she wasn't. She never asked for a combination. There was no evidence of disability. She admitted that she allowed them to clean up the patio. There was no rule that prevented her from cleaning up the patio. In short, there was no possible way there was any merit to that case. And that is the one case that the court could find. And our circumstances are just not even close. Thank you, counsel. Your time is up. Thank you, Your Honor. Good morning. May it please the court. I am Rodney Parker. I represent Miller-Harrison and Douglas Sumway in these cases. Or I guess here is these cases, there is a case. They are the attorneys who were involved in the case. In this case, the trial court, based on the conclusion that the retaliation claims were frivolous, awarded attorney's fees. The court used an appropriate standard. It understood the standard, recited it, and then it carefully applied that standard. The standard is stated by the trial court, and I think by the case law, is that the claim lacks arguable basis in law or fact. There were three components to the retaliation claim. And there's a lot of things that happened in this case. But the claim itself was based on three things. And I would refer you to page 33 of the appendix for this list. The first one was the September 6th letter, which has previously been discussed. That is the letter to Cincinnati. It was in response to a letter that Ms. Hatfield had sent to the insurance agent tendering the claims. Now, she had no right to do that. And when she did that, she opened the door to something happening in response to that, that she may not be able to control. And what happened was that when the insurance agent, this Buckner group, asked about it, they had some uncertainty. And you see why in the actual document, because it has her full signature, her Cincinnati signature. It does look like it's being tendered from one insurer to another. And she has used that status at various times in her dispute with the HOA. But the key to that is it has to be retaliatory for the filing of a fair housing complaint. Not retaliatory for the tender itself. And that's where the link doesn't exist. There is no connection to the Fair Housing Act complaint versus simply that she sent this letter to Buckner and the HOA responded by trying to clarify what's going on. That's looking at it in isolation, though. We have to look at all of the facts that she pled, don't we? And if you put them all together, couldn't a plausible case be made that these actions by the HOA were in retaliation for her filing a fair housing claim? Well, I don't think that she even connects those dots, Judge Carson. And more importantly, if I can just back up. Maybe what I'm doing is backing into the other appellate case for just a minute. But the fair housing claim has to involve certain specific things having to do with, if I may simplify it a little bit, the transaction in which housing is obtained or where financing is obtained. And this had nothing to do with that. This had to do with claims that one of her neighbors was harassing her because she wasn't a Mormon years after she moved in. So it really isn't an appropriate fair housing claim in the first place. And so you have that background. And then what the lawyers do or the HOA, through the lawyers, do in response to a specific act that she takes, which is tendering something to the insurance companies she's not allowed to tender. And then they respond to that. And I do think you can look at that in isolation. And it isn't part of it. The second basis for the retaliation claim was the September 10th letter to the HOA members regarding the assessments. And that is at page 80 of the appendix. And in that letter, the HOA, it simply states the facts. That these complaints, this is happening. We're incurring attorney's fees. You're going to receive an assessment. And this is why you're receiving this assessment. Now, retaliation has to be more than simply defending yourself, simply reacting to what is being put on your plate. And when the HOA receives this and they incur these fees, they have to tell their membership what's going on. That isn't retaliation, to tell your members what's going on. That's simply part of the process that was placed in motion by Ms. Hatfield. Mr. Parker, I don't mean to cut you off. But this is what's gnawing at me in this case. Let's put in a bucket for a moment the question of whether this Fair Housing Act retaliation claim had merit or not. That just is an entirely different issue. I mean, we can talk here all day about whether this claim should be dismissed. But that's an entirely different issue than imposing monetary sanctions on a plaintiff. And that's what concerns me. Because the law would seem to contemplate that there's a gap between those two things. So what is your best argument for why she was incorrigibly litigious? And what would you point to if you have a case that would exemplify that? And if you want to, you can expand it essentially across the board to the three factors the court looked at. But right now, I want to focus on the incorrigibly litigious. Because there do seem to be only three things that she did. And so where do we get incorrigibly out of that? If you look at the, I think there's a lot packed into that question. But if you look at the judge's decision, I can't find it. I thought I had the page there. But that was not the page. So just start with incorrigibly litigious. That's what I was looking for. The list that's given in the court's decision is that she makes threats of suit against board members and their spouses. She had threatened that she would file suit against them and place them in an awkward light. She did this in relation to putting into context that she handles these kinds of claims in her profession as an insurance professional. She said that there is talk of suit being filed. She spread that rumor among the community. She talked about using her professional expertise of the cost of HOA suits. She filed a bar complaint against Mr. Shumway. She had increasing settlement demands as the case went on that were increasingly unreasonable. Those were the things that the trial court relied on to describe her as incorrigibly litigious. And what comes out of that, though, is my question. Seemingly, the court was not using litigious in some sort of strict sense of filing legal claims. I agree with that. And some of these were threats of litigation. So my point would be, I guess, two things. You're right. There's a lot in it. Let's unpack it. One, is it enough that there be threats of litigation as opposed to litigation for that characterization of incorrigibly litigious? And if the answer is yes, what would you look to to provide guidance as authority for that? I think that the answer is that the way I would look at this is that it shouldn't be sliced in this fashion. The trial court talked about that it was frivolous. It held that it was frivolous. And then he backed up his position with these other observations. And yeah, he did use that word litigious. And I tend to agree with you that it's not necessarily the right word to use. But it was an observation about her behavior. And what's happening here is we're dealing with this line between correctness review and discretion and where it falls. And I think that we're right on that border there where what the trial court is doing is exercising its discretion to look at the situation as a whole to determine whether fees are appropriate in the case, whether it meets the high standard of the case law. And I agree it is a high standard, but not an impossibly high standard. No, it isn't. And this leads me into what was going to be my second question. When you talk about as a whole, I take it then that at least your primary position out of the blocks is that we should view these three factors together as supporting this fee award. In other words, not view them as standalone items, but view them as a whole to determine whether this is sufficient. Is that correct? Yes, I think that's correct. And I think that you see that. I think that's what you see in the cases. And admittedly, there aren't a lot of cases on this point. But that certainly is what the trial court did. And the other thing about this is the plaintiff, when this issue was before the court, the fee issue was before the court, and the allegations were made that I just described and others, and they were made in writing, with affidavits, and with evidence, there was no response. The response was extremely superficial. It was similar to what we heard this morning. Well, look at our complaint. Look at our complaint. But there was no effort to substantively respond beyond look at our complaint. So for those reasons, I think the court was correct in what it did. Let me ask you on the substantive response point, that whether we use the term incorrigibly litigious or not, if you'll remind me, in your briefing on the fees issue, did you use some version of that in saying this justifies fees? We followed in our briefing similar to what the trial court did. The trial court said he applied a frivolous standard. He says, I can award fees based on frivolity alone. And he finds that it's frivolous. Then he moves on and he says, there are these other reasons. And you used the other reasons, too, in your briefing, and there was no response. Is that what you're telling me? In the trial? You're talking about the trial court. In the trial court, that's what I'm talking about. Yes, yes, yes. OK. I promised Mr. Trumbo I would leave him a couple of minutes. So unless you have other questions, I'm going to keep my promise. Thank you. Your Honors, you asked for a case that supports this litigiousness, Hensley v. Eckerhart from the US Supreme Court talks about awarding fees for suit brought to harass or embarrass the defendant. So it's not just frivolity that you're looking at. You can also look at the behavior. So there is an argument made that the judge made improper findings. There was a motion for fees. And under Rule 43 of the Rules of Civil Procedure, a court can take evidence on a motion that relies on outside. So at that point, it was appropriate to take on evidence. And yes, we did lay out the history. We said this is one of the reasons why fees are appropriate back in 2017. This is what happened. And that's what I want to be sure on. So do you agree with the notion that in your briefing and in your arguments, part of your justification for fees was not just the frivolity, but the question of a pattern of abusive litigation. And I use that writ large. I mean loosely litigious type conduct. And their response was of the nature that we hear today. Do you agree with that? Yes. Their response was to say this is brought out of context. And we filed a reply saying you can't just say it's out of context. You need to provide context if it's out of context. You need to show why you think that the evidence we presented does not accurately reflect her behavior throughout for years. They didn't present any opposing evidence. And Judge Stewart relied on that. He made a finding and conclusion. They did not present any contrary evidence. What else could Judge Stewart do but find the facts to be as they were presented to the only facts that were presented to him? Thank you. Thank you. I'll give you 30 seconds if you want it. So we fully briefed every motion. I was trying to bring up that response to that pleading. But to suggest that we didn't respond is not, we didn't respond. But I would just point to the core of our argument. And that is, there's just no, you don't believe there's any way that the complaint as drafted and the claims achieves any of these standards. It's well beyond these standards. So it's just not an issue. All right. Thank you, counsel. Case is submitted. Appreciate your argument.